**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PARALLEL IRON, LLC,

                Plaintiff,

vs.

ADCONION MEDIA INC., ET AL.

                Defendants.

C.A. No. 11-799-RGA

**REDACTED VERSION**

---

**PLAINTIFF PARALLEL IRON, LLC'S ANSWERING BRIEF TO**
**DEFENDANT EMC CORPORATION'S MOTION FOR ATTORNEYS' FEES AND**
**RELATED EXPENSES PURSUANT TO FED. R. CIV. P. 54 AND 35 U.S.C. § 285**

Original Filed: August 31, 2012
Redacted Version Filed: September 14, 2012

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Plaintiff Parallel Iron, LLC*

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY ...................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................................3

     A.   The Parallel Iron Portfolio Is The Result of Years Of Work—Investing In Patenting The Technology And Attempting To Commercialize It........................3

     B.   The Original RING, Inc. Portfolio Is Transferred to RING Texas, and Litigation Over The Memory Access Patents Ensues...............................................4

     C.   Another Subsidiary Company—Parallel Iron—Is Formed As Part of The Reorganization To Hold Data Storage Patents. ......................................................4

     D.   Parallel Iron's Pre-Suit Investigation Was Costly And Extensive..........................5

     E.   Parallel Iron Dismissed Its Cases Against All Defendants Against Whom It Had Asserted The '565 Patent. ................................................................................6

     F.   EMC's Retaliatory Declaratory Judgment Action InThe United States District Court of Massachusetts. ...............................................................................7

III. ARGUMENT AND AUTHORITY .......................................................................................7

     A.   EMC Makes No Inherent Authority Argument And Has Waived That Point. ........................................................................................................................8

     B.   EMC Cites No Controlling Authority To Justify Sanctions. ..................................9

          1.   Standing Is A Dispositive Issue, But Not Per Se Sanctionable, And Clearly Not On This Record Of Objective Merit And No Bad Faith. .........................................................................................................9

          2.   No Subjective Bad Faith: Parallel Iron Performed Considerable Diligence To Prepare To File Its Case......................................................13

     C.   EMC's Reliance on *Eon-Net* Cannot Create A Record Of Bad Faith That Does Not Otherwise Exist Here.............................................................................17

     D.   EMC Misstates The Standard It Must Meet And Makes No Argument To Justify Fees, Even If The Case Were "Exceptional." ...........................................18

IV.  CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.,*
   23 F.3d 374 (Fed. Cir. 1994)...................................................................................................9

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991).................................................................................................................9

*Encomp, Inc. v. L-com, Inc.,*
   999 F. Supp. 264 (D. Conn. 1998)...................................................................................13, 14

*Enovsys LLC v. Nextel Commcn's, Inc.,*
   CV 06-05306 RSWL SHX, 2008 WL 8773518 (C.D. Cal. Feb. 26, 2008)............................12

*Eon-Net LP v. Flagstar Bancorp,*
   653 F.3d 1314 (Fed. Cir. 2011)......................................................................................17, 18

*Forest Labs, Forest Labs., Inc. v. Abbott Labs.,*
   339 F.3d 1324 (Fed. Cir. 2003)........................................................................................7, 18

*Frey v. Grumbine's RV,*
   1:10-CV-1457, 2010 WL 4718750 (M.D. Pa. Nov. 15, 2010)...............................................9

*Gorum v. Sessions,*
   561 F.3d 179 (3d Cir. 2009)...................................................................................................9

*iLOR, LLC v. Google, Inc.,*
   631 F.3d 1372 (Fed. Cir. 2011)............................................................................................13

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.,*
   No. 09-MD-2118-SLR, 2012 WL 95592 (D. Del. Jan. 12, 2012) ...................................13, 14

*In re Fallaux,*
   564 F.3d 1313 (Fed. Cir. 2009).............................................................................................10

*In re Griswold,*
   365 F.2d 834 (C.C.P.A. 1966) ..............................................................................................10

*In re Van Ornum,*
   686 F.2d 937 (C.C.P.A. 1982) ..............................................................................................10

*Informatics Applications Group, Inc. v. Shkolnikov,*
   836 F. Supp. 2d 400 (E.D. Va. 2011) ...................................................................................11

*ISCO International Inc. v. Conducus, Inc.,*
   279 F. Supp. 2d 489 (D. Del. 2003)................................................................................15, 16

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
   372 F. Supp. 2d 833 (E.D. Va. 2005) ...................................................................7

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*,
   No. 96-101-SLR, 1997 WL 811563 (D. Del. Dec. 23, 1997)..................................18

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
   603 F.3d 943 (Fed. Cir. 2010)................................................................................9

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996)...............................................................................18

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
   52 F.3d 1026 (Fed. Cir. 1995)...............................................................................12

*Paradise Creations, Inc. v. UV Sales, Inc.*,
   315 F.3d 1304 (Fed. Cir. 2003)...............................................................................7

*Patlex Corp. v. Mossinghoff*,
   758 771 F.2d 480 (Fed. Cir. 1985)..........................................................................9

*Pharmacia Corp. v. Par Pharm., Inc.*,
   417 F.3d 1369 (Fed. Cir. 2005)..............................................................................10

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004)...............................................................................8

*Quigley Corp. v. Gumtech Int'l, Inc.*,
   No. CIV. A. 99-5577, 2000 WL 424269 (E.D. Pa. Apr. 19, 2000) ..............................7, 11, 12

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*,
   No. C-04-4265 MMC, 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005) ..........................13, 15

*Rohm & Haas Co. v. Crystal Chem. Co.*,
   736 F.2d 688 (Fed. Cir. 1984)................................................................................7

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005)................................................................................7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
   944 F.2d 870 (Fed. Cir. 1991)...............................................................................11

*Visto Corp. v. Sproqit Techs., Inc.*,
   No. C-04-0651, 2007 WL 160942 (N.D. Cal. Jan.17, 2007)....................................7

STATUTES

35 U.S.C. § 285 ("Section 285")........................................................................1, 2, 7, 16

**COURT RULES**

Rule 11 ...............................................................................................................6, 12, 15

**OTHER AUTHORITIES**

1 Moy's Walker on Patents (4th ed.) .............................................................................10

Emily A. Evans & Jill A. Jacobson, *Double Patenting Recapitulated*, 87 J. Pat. &
    Trademark Off. Soc'y 625, 635 (2005) ...................................................................10

Manual of Patent Examining Procedure ....................................................................1, 9

Plaintiff Parallel Iron, LLC ("Parallel Iron") respectfully files this Answering Brief in opposition to Defendant EMC Corporation's ("EMC") motion for attorneys' fees and other expenses.

## I.    INTRODUCTION AND SUMMARY

This case is not exceptional under 35 U.S.C. § 285 ("Section 285") because EMC cannot produce clear and convincing evidence that this case was (i) upon filing objectively baseless and (ii) pursued thereafter in bad faith.  EMC cannot meet its burden because Parallel Iron did not proceed in bad faith at any time.   Indeed, the corporate structure of RING Technology Enterprises ("RING, Inc."), including its related subsidiary companies RING Technology Enterprises of Texas, LLC ("RING Texas"), and Parallel Iron, manifested sufficient commonality of corporate ownership amongst them to meet the terminal disclaimer: ownership was complete of the two patents, U.S. Patent No. 6,879,526 (the "'526 Patent") and 7,415,565 (the "'565 Patent), as between RING Texas and Parallel Iron in September 2011 when this case was filed.  Corporate structures of related companies can meet common ownership requirements, as Section 706 of the Manual of Patent Examining Procedure confirms.  But most dispositive of the exceptional case allegation is the fact that at no time did Parallel Iron proceed in bad faith. Parallel Iron believed itself at all times in full possession of all rights required to file suit on the '565 patent.  All transfers from RING Texas to Parallel Iron were specifically intended to ensure Parallel Iron had all patents resulting from the years of hard work developing data storage technology.

The commonality of ownership necessary to maintain the suit ended on December 28, 2011, when the '526 patent was transferred outside the RING corporate structure to RPX Corporation ("RPX").  Once Parallel Iron learned of the disparate ownership of the patents,

1

Parallel Iron ceased litigating—immediately.  This conduct confirms Parallel Iron's position: it never intended, nor did it want, to continue with its infringement case on the '565 patent absent the standing to do so.  No purpose would be served in proceeding otherwise: Parallel Iron has a broad portfolio of patents in the area of high performance data storage technology for which evidence of widespread infringement has been analyzed in depth for more than a year.  It need not purposefully assert one patent out of this portfolio knowing it was unenforceable or had become unenforceable.   Parallel Iron did not immediately recognize that the '526 Patent's transfer outside of the RING corporate family to RPX created a standing issue given Parallel Iron's good faith belief that the original transfer to Parallel Iron of all data storage technology patents gave Parallel Iron all the rights it needed to enforce the data storage technology patents.  Parallel Iron learned of the problem when another defendant highlighted the standing issue in May 2012.

EMC did not discover that a terminal disclaimer/ownership issue had arisen either, as EMC concedes that Parallel Iron brought this issue to EMC's attention.  Rather than cooperate with Parallel Iron to dismiss this case, like all of its other co-defendants who agreed to bear their own costs and fees, EMC opposed dismissal and filed the instant motion.  On this record no clear and convincing evidence exists of Parallel Iron's bad faith, either in filing the complaint or in continuing to litigate for a six-month period following the '526 Patent's transfer to RPX.  EMC cites no controlling authority that declares a case exceptional with a standing issue such as here.  Additionally, the EMC motion fails to address part two of the two-part analysis of whether fees should be awarded under Section 285 *if* the case is exceptional. EMC addresses only whether the case is exceptional, and says nothing on the separate determination of why equitable

considerations make a fee award appropriate.  For this reason alone the Court should deny a monetary sanction of any kind.

## II.  FACTUAL BACKGROUND

### A.  The Parallel Iron Portfolio Is The Result of Years Of Work—Investing In Patenting The Technology And Attempting To Commercialize It.

The portfolio of data storage patents now owned by Parallel Iron (the "Parallel Iron Patents") has a long history:  years of work developing high-performance storage technology, then patenting the resulting technology, assembling a team of executives and advisors to form a company, and attempting to commercialize the technology.  (*See* Declaration of Steven L. Dodd ("Dodd Decl.") ¶4; Declaration of Joseph S. Hoover, Jr. ("Hoover Decl.") ¶4.)  Specifically, one of the named inventors of the patent in suit, Steven Dodd, spearheaded efforts in the early 2000s to assemble the right team of experts and advisors, who could develop business plans and models and begin raising the money required to bring the patented technologies to market.  (Dodd. Decl. ¶4.) The team envisioned a company building and marketing high performance storage systems, but due to the collapse of the venture capital market around that same time, the fundraising campaign was not successful.  (*Id.*)  Nevertheless, the effort continued to improve and expand the patent portfolio.  (*Id.* ¶¶4-5.)  After several years of continuing work on developing the technology and the patent portfolio, it became apparent to Mr. Dodd that while the Parallel Iron Patents could not be commercialized due to the timing of the venture capital market collapse, others were having tremendous success with high performance data solutions—at the expense of the years of work and investment behind the Parallel Iron Patents.  (*Id.* ¶5; Hoover Decl. ¶¶4-5.)

**B.    The Original RING, Inc. Portfolio Is Transferred to RING Texas, and Litigation Over The Memory Access Patents Ensues.**

The history of the Parallel Iron Patents begins with RING, Inc.  (Hoover Decl. ¶¶3, 5, 8, 10.)  It was RING, Inc. that first held all the patents covering the innovative technology that was the result of years of research of development by Mr. Dodd and others.  (*See id*. ¶4; Dodd Decl. ¶¶3-4.)  It was RING, Inc. that sought funding to commercialize these patents, and RING Inc. that, due to the collapse in the venture capital markets in the early 2000s, could not build the company it envisioned to commercialize this technology.  (Hoover Decl. ¶4; Dodd. Decl. ¶4.)  RING, Inc. also recognized that despite its frustrated fundraising efforts for a company formed around its patented technologies, its patented technologies were omnipresent in the marketplace.  (*See id.*)  Accordingly, RING, Inc. formed a subsidiary, RING Texas, to which RING Inc. could transfer and assign all of its U.S. patents and patent applications—including the '565 patent and the '526 patent.  (Hoover Decl. ¶5.)  RING Texas had the entire (U.S.) RING portfolio, and began its patent enforcement efforts with memory access technology.  (*Id*. ¶¶5-6.)  As part the resolution of that litigation, RING Texas transferred all of its memory access patents to RPX in December 2011.  (*Id*. ¶7 (noting agreement to transfer at end of litigation).)

**C.    Another Subsidiary Company—Parallel Iron—Is Formed As Part of The Reorganization To Hold Data Storage Patents.**

As part of an organizational effort, and to avoid confusion given the upcoming transfer to RPX of the memory access patents, RING, Inc. formed Parallel Iron (at that time a Texas limited liability company), to hold another part of the portfolio, the data storage patents.  (Hoover Decl. ¶8.)  Those transfers, including a transfer of the '565 Patent, occurred on March 13, 2010.  (*Id*.)  Both the '526 Patent and the '565 Patent, which related to the data storage side of the original portfolio, were inadvertently separated from each other in the reorganization process.  As a

4

result, the '526 Patent was not transferred to Parallel Iron in March 2010, but remained with RING Texas and was part of the assignment and transfer of the memory access patents to RPX in the resolution of the memory access patent litigation. (*See* Hoover Decl. ¶¶7-8, 10 (intended Parallel Iron to have all data storage technology patents); *see also* Dodd Decl. ¶10.)

### D.      Parallel Iron's Pre-Suit Investigation Was Costly And Extensive.

Before Parallel Iron filed suit in this Court on the '565 patent, it performed extensive investigation and analysis. (*See generally* Dodd Decl. ¶¶6-7; Hoover Decl. ¶9.)  Mr. Dodd, one of the named inventors, performed his own extensive analysis concerning EMC's infringement. (Dodd Decl. ¶¶5-8.)   Additional work and pre-suit analysis was done by a team of experts, consultants and legal advisors—with Parallel Iron's retaining still another outside technical expert in addition to Mr. Dodd.  (*Id.*; Hoover Decl. ¶9.)  For the outside consultant's services to assist with this investigation, Parallel Iron spent approximately $32,000.00.  (Dodd Decl. ¶7.) This process occurred over the course of two to three months.  (*Id.* ¶8.)  Because of EMC's position in the marketplace, focus on EMC has been necessary given the evidence of its widespread infringing acts.  (*Id.* ¶8-9.)  Moreover, additional analysis and research into EMC's infringement of other Parallel Iron Patents has been ongoing since the original suit was filed, and remains ongoing.  (*Id.* ¶9.)  One new lawsuit has been filed against EMC upon completion of the pre-suit investigations.   (*See id.* (describing the additional ongoing research and analysis).) Thus, pursuant to its practice and recognition of its duties, Parallel Iron filed this lawsuit only after ensuring it had done everything necessary to accuse EMC of infringement, and believing in good faith it had all rights to do so.  (*See generally* Dodd Decl. ¶¶6-10; Hoover Decl. ¶¶9-10.)

**E.      Parallel Iron Dismissed Its Cases Against All Defendants Against Whom It Had Asserted The '565 Patent.**

Parallel Iron was therefore very surprised when Amazon.com raised the standing issue during the week of May 21, 2012.  (Hoover Decl. ¶10.) On May 29, 2012, Amazon.com sent a detailed email to Parallel Iron, stating (i) the legal grounds for a motion for summary judgment that the terminal disclaimer raised; (ii) no Rule 11 basis existed to continue the lawsuit against Amazon.com; and (iii) if Amazon.com had to bring a dispositive motion, it would seek fees and expenses from Parallel Iron.  (*See* Declaration of Richard Kirk ("Kirk Decl.") Ex. A (email of May 29, 2012 from C. Kao to M. Hogge).)  That same day, as EMC's motion notes, Parallel Iron informed all defendants that it would be dismissing the case.  Parallel Iron was forthright as to the reasons: counsel for Amazon.com had highlighted the standing issue caused by the terminal disclaimer in the file history after the transfer of the '529 Patent.  Parallel Iron would not burden the parties and the Court with summary judgment motions, but rather would voluntarily dismiss its claims against all defendants.  Parallel Iron also agreed to suspend all pending deadlines for the defendants while the dismissal process was underway.   All parties, except EMC, are assuming their own expenses.  Of the impacted parties, EMC is the only defendant that seeks sanctions against Parallel Iron.  (Hoover Decl. ¶¶10-11.)  Although EMC and Parallel Iron attempted to reach an alternative resolution in good faith negotiations, EMC demanded terms that were unacceptable, and Parallel Iron had no choice but to reject them.  (*Id.* ¶11.)

In the interim, and before the standing issue ever arose, Parallel Iron was already working on investigation and analysis of infringement by other companies' systems and products, including EMC products, determining the extent and nature of infringement of additional Parallel Iron patents.  (Dodd Decl. ¶¶8-9.)   After that analysis, Parallel Iron asserted the additional patents against EMC.  (*See generally id.*)

**F.     EMC's Retaliatory Declaratory Judgment Action In The United States District Court of Massachusetts.**

After Parallel Iron filed its new lawsuits once the pre-suit investigation was completed, the very next day EMC filed a duplicative declaratory judgment lawsuit in the District of Massachusetts.  (Kirk Decl. Ex. B (copy of Motion to Dismiss and attachments).)  EMC's Massachusetts declaratory judgment action is a mirror image of the infringement suits that Parallel Iron had filed earlier in this District.  (*See id.*)  Parallel Iron thus had to retain additional counsel to dismiss EMC's clearly retaliatory and duplicative litigation for improper venue and a violation of the first-to-file rule.  (*See id.*)

## III.    ARGUMENT AND AUTHORITY

The "use of the term 'exceptional' in § 285 is not to be taken lightly."[1]   To give "exceptional" its intended meaning, "Congress…made clear that this should occur only in rare or extraordinary cases."[2]   Invoking Section 285 was never intended to be an "ordinary thing in patent cases," but limited to circumstances in which it is necessary to then award attorney fees to prevent "gross injustice" or bad faith litigation.[3]   This is no such case.   Standing issues are frequently litigated in patent cases, given the complex relationships and documents that must be analyzed in many cases to determine standing.[4]   Such issues are resolved in dispositive motions—not exceptional case motions—as EMC's own authorities reflect.   *E.g., Paradise*

---

[1] *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651, 2007 WL 160942, at *2 (N.D. Cal. Jan.17, 2007).

[2] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 851 (E.D. Va. 2005).

[3] *Forest Labs, Forest Labs., Inc. v. Abbott Labs.,* 339 F.3d 1324, 1329 (Fed. Cir. 2003) (citing *Rohm & Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688, 690-91 (Fed. Cir. 1984) (quoting S. Rep. No. 79-1503 (1946)).

[4] *See, e.g.*, *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (analyzing several cases on standing that turned on contract and assignment analyses for what rights transferred and retained; noting standing could potentially be cured but had not been); *Quigley Corp. v. Gumtech Int'l, Inc.*, No. CIV. A. 99-5577, 2000 WL 424269, at *9 (E.D. Pa. Apr. 19, 2000) (analyzing documents on summary judgment to determine whether plaintiff had standing to sue given terminal disclaimer; noting no policy reasons for terminal disclaimer implicated).

*Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1307-10 (Fed. Cir. 2003) (cited in EMC Motion at 7, 9) (granting summary judgment on plaintiff's lack of standing because corporation lacked capacity and authority to sue for infringement).   EMC does not cite any authority finding a case exceptional because of a standing issue or a terminal disclaimer issue.   Here, it is Parallel Iron's prompt action and resolution of this litigation, upon another party discovering the terminal disclaimer and ownership issue, which leaves EMC stretching to make this case "exceptional." EMC argues there was no investigation and this case is therefore a meritless and frivolous lawsuit, but the record is to the contrary.   Parallel Iron performed an ample investigation, including retaining an outside expert and completing extensive pre-suit filing analysis and claim charts.   At best, what EMC's motion suggests is ordinary negligence, which does not suffice for the extraordinary finding that a case is "exceptional."   *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004) (affirming district court finding case not exceptional noting investigation "while not ideal, did not rise to the level of bad faith litigation or gross negligence required for an award of attorney fees").   On this record of extensive diligence to fulfill all obligations to prepare a well-founded infringement lawsuit, however, characterizing any conduct as negligence is unreasonable.   Nor is the lawsuit objectively wholly meritless:   the '526 Patent and the '565 Patent, until the transfer to RPX, were held by two companies with a common parent, which satisfied the terminal disclaimer and gave Parallel Iron standing to enforce its property rights against EMC.

### A.    EMC Makes No Inherent Authority Argument And Has Waived That Point.

EMC appears to be invoking this Court's inherent authority to award sanctions.   (Motion at 1).  EMC makes no such arguments save a single mention in the first sentence of its motion to "inherent" authority.  A "passing reference" does not constitute argument sufficient to justify the

relief sought.[5]  If EMC's intent is to rely on the Court's inherent power for sanctions, it cannot. As the Federal Circuit confirmed in *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943 (Fed. Cir. 2010), in which it reversed an award of sanctions, inherent power is a "residual authority, to be exercised sparingly"—not a grant of authority to "undermine the American rule" of no attorney fees to a prevailing party." *Id.* at 966. A court resorts to inherent power only where rules or statutes do not reach the "'acts which degrade the judicial system.'"  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991)).

### B.       EMC Cites No Controlling Authority To Justify Sanctions.

#### 1.       Standing Is A Dispositive Issue, But Not Per Se Sanctionable, And Clearly Not On This Record Of Objective Merit And No Bad Faith.

That EMC cannot find any authority in which a standing or terminal disclaimer issue warranted exceptional case sanctions may be because of the limited purpose of a terminal disclaimer.  Both Parallel Ring and RING Texas (before it was dissolved) were RING, Inc. subsidiaries.  As a result, until the RPX transfer in December 2011, ownership of the '526 Patent and the '565 Patent was common.  (Hoover Decl. ¶ 2 (describing corporate structure: RING, Inc. as parent company to subsidiaries RING Texas and Parallel Iron).) The Manual of Patent Examining Procedure confirms that commonly owned subsidiaries satisfies the common ownership standing requirement to assert the patent in suit.  *Patlex Corp. v. Mossinghoff*, 758 771 F.2d 480, 486 (Fed. Cir. 1985) (MPEP public resource on which public can rely).  Section 706 of the MPEP shows examples of common ownership structures, including a parent-subsidiary.  By the same logic, RING's corporate structure of a common parent with

---

[5] *See Frey v. Grumbine's RV*, 1:10-CV-1457, 2010 WL 4718750, at *8 (M.D. Pa. Nov. 15, 2010) (applying waiver concept in district court as stated in *Gorum v. Sessions*, 561 F.3d 179, 185 n.4 (3d Cir. 2009): "An issue is waived unless a party raises it in its opening brief…a passing reference to an issue...will not suffice to bring that issue before this court.").

subsidiaries, together owning the two patents subject to the terminal disclaimer, confers standing to enforce the patents.  (Kirk Decl. Ex. C (excerpt section 706).)  Defendants do not provide any support for a contrary finding.  As a result, Parallel Iron had standing to assert the '565 Patent against EMC when it filed this case.

Parallel Iron's assertion of the '565 Patent against EMC while its corporate sibling held the '526 Patent did not implicate any of the potential injuries that terminal disclaimers were created to address.  *See generally In re Van Ornum*, 686 F.2d 937, 948 (C.C.P.A. 1982) (describing history and background of regulation permitting terminal disclaimers; approving regulation for terminal disclaimer procedure).  Terminal disclaimers serve two purposes: (i) to prevent the second patent from extending the length of the patent term, and (ii) to shield competitors from the risk of multiple, inconsistent suits for infringement."  1 Moy's Walker on Patents § 3:67 (4th ed.).  These policies are effected through the common ownership requirement.  Because a terminal disclaimer by definition requires common ownership of certain patents, a benefit to the public is created: "preventing an alleged infringer from being subjected to multiple lawsuits from different parties with regard to the same patented invention," and limiting the term of the second patent covering the same invention, arguably, to the term of the first patent.  Emily A. Evans & Jill A. Jacobson, *Double Patenting Recapitulated*, 87 J. Pat. & Trademark Off. Soc'y 625, 635 (2005); *In re Griswold,* 365 F.2d 834, 840 n.5 (C.C.P.A. 1966) (noting co-ownership requirement as creative solution to potential harassment suits from two separate patents) (cited in *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009)); *Pharmacia Corp. v. Par Pharm., Inc*., 417 F.3d 1369, 1374 (Fed. Cir. 2005) ("[b]eyond their shared expiration date, however, two disclaimed patents maintain significant attributes of individuality").  Neither of these public policy concerns has been implicated here.  Parallel Iron's

10

patent monopoly was not improperly extended, or attempted to be extended. Nor was there a possibility of EMC's being subject to conflicting infringement demands from different entities— and EMC cites no such concern.

Indeed, in *Quigley Corp. v. Gumtech International, Inc.*, the court compared the standing issue that arises in double patenting/terminal disclaimers to multiple assignees through multiple transaction documents. In both scenarios, there is "the risk of multiple suits." And that risk generates the underlying concern for multiple lawsuits on the patents subject to the terminal disclaimer. *Quigley Corp.*, CIV. A. 99-5577, 2000 WL 424269, at *6 (E.D. Pa. Apr. 19, 2000) ("The concern over double patenting implicates standing because one of the policy considerations for the double patenting prohibition is to prevent multiple lawsuits filed by various licensees against an alleged infringer, each based on a separate patent for essentially the same invention…Analogously, a patentee cannot split up the claims in one patent among several assignees, partially because to do so would lead to the risk of multiple suits") (citations omitted). Yet cases addressing whether a plaintiff has "all substantial rights" to file suit are not unusual at all in patent law—and clearly not exceptional. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (analyzing types of issues affecting contractual rights assigned and retained to determine whether plaintiff has "all substantial rights" to create standing to sue for infringement). Further, courts recognize a terminal disclaimer can be akin to an inventor issue that may be corrected. Thus, the mere fact of a terminal disclaimer does not end the story in some cases, and summary disposition based on the mere existence of a terminal disclaimer is not a foregone conclusion. *See, e.g., Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 414-15 (E.D. Va. 2011) (on motion to dismiss for lack of jurisdiction: terminal disclaimer issue due to ownership issue does not

resolve issue on enforceability as inventorship could be corrected; questioning whether disclaimer necessary).

Even if Parallel Iron is wrong and patents held separately by commonly-owned subsidiaries do not satisfy the common ownership requirement, this is not an exceptional case. Standing can be a complicated inquiry. *See, e.g.*, *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995) (noting rule that terms of licensing agreement must be analyzed for whether sufficient proprietary rights transferred; granting right to sue alone insufficient: "licensee must have beneficial ownership of some of the patentee's proprietary rights"); *Quigley Corp.*, 2000 WL 424269, at \*6-\*7 (lengthy analysis of documents on summary judgment to determine whether plaintiff had standing to sue). Just because a court dismisses a case or enters summary judgment for lack of standing does not make such a case exceptional. In *Enovsys LLC v. Nextel Commcn's, Inc.*, CV 06-05306 RSWL SHX, 2008 WL 8773518 (C.D. Cal. Feb. 26, 2008), a case in which corporate structure for common ownership also was at issue, the court granted summary judgment on the same grounds EMC urges here are extraordinary and sanctionable: (i) the asserted patent was subject to a terminal disclaimer/common ownership requirement; and (ii) before a certain date the asserted patent and original patent were not commonly owned and the patent was therefore unenforceable. *Id*. at \*1. The plaintiff lost on summary judgment. But it was not an exceptional case, as the defendant realized: the docket sheet shows no sanction just because the plaintiff lost on a common ownership issue. (*See* Kirk Decl. Ex. D (copy of docket sheet showing no motion for fees filed in the case).)

Similarly, the Court should find this case not exceptional, particularly when Parallel Iron performed adequate diligence and investigation to discharge its Rule 11 obligations and fully believed itself armed with all necessary rights at all times to litigate the '565 Patent. To hold that

every case where standing is lost because an inadvertent separation of patents triggered a terminal disclaimer is automatically exceptional is untenable.   It erroneously immunizes the record from the careful review that the Federal Circuit requires to find a particular case exceptional and justify a fee award.   *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1376 (Fed. Cir. 2011) (given "substantial economic and reputational impact of such sanctions" court has duty "to examine the record with care").   The Court should decline EMC's invitation to reach such a holding here and should find that this case is not exceptional.

### 2. No Subjective Bad Faith: Parallel Iron Performed Considerable Diligence To Prepare To File Its Case.

EMC attempts to demonstrate subjective bad faith because courts have found a case exceptional when a plaintiff fails to "assess adequately the merits of its case prior to bringing suit." (Motion at 12.)  That is hardly the case here given Parallel Iron's extensive diligence and investigation by a team of technical consultants and advisors.  Nor do any of the cases EMC cites for its subjective bad faith argument find a case exceptional and award fees on such a limited record.[6]  And contrary to EMC's cursory assertion that in "each of these cases" the court found "the plaintiff ignored or failed to recognize an objective bar to recovery," and that this finding led to the fee award (Motion at 12), review of the cases shows that this is not precisely the case.

First, in *Encomp, Inc. v. L-com, Inc*., the court addressed exceptionality based on **years** of correspondence between the parties.  During that time, the defendant worked actively and in good faith to address the plaintiff's infringement concerns.  The plaintiff, however, ignored the defendant's identification of "the problems with the infringement claims," and the defendant's attempt to settle the case:

---

[6]   *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617, at *6   (N.D. Cal. Nov. 21, 2005); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, No. 09-MD-2118-SLR, 2012 WL 95592 (D. Del. Jan. 12, 2012); *Encomp, Inc. v. L-com, Inc*., 999 F. Supp. 264, 269 (D. Conn. 1998).

13

> [D]efendant repeatedly communicated to plaintiff both before and during the suit
> the problems with the infringement claims, including that the accused products
> did not meet the claim limitations in the patent and were barred as a matter of law,
> as well as the laches and equitable estoppel defenses….

999 F. Supp. at 269.   The "defendant's reasonableness and good faith efforts to resolve the dispute...[was] an attitude directly contrary to that shown by plaintiff." *Id*.   Quite the contrary occurred here: Parallel Iron approached EMC to offer dismissal—and with prejudice—as soon as it learned of the standing issue.  EMC has prolonged the litigation, not Parallel Iron.

EMC's reliance on *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation* is similarly inapposite.  EMC characterizes this case as permitting attorney fees "where a suit became unjustifiable during the course of litigation." (Motion at 12.)  This case does not justify sanctions here.  In the *Cyclobenzaprine* case, the plaintiffs admitted before trial they had no infringement caseand "***agreed to stipulate*** to the fact" that the accused product in a particular formulation in its ANDA did not infringe.  2012 WL 95592, at *3 (emphasis added). Notwithstanding this agreement, the plaintiffs proceeded with their infringement case anyway. Their sole justification for doing so was to keep an eye on the defendant to monitor changes in the drug formulation, which could potentially, maybe, then infringe—even though FDA rules would have required the putative infringer to re-certify if it did reformulate.  In short, the lawsuit acted as a place-keeper, to keep the defendant in litigation just in case it might infringe pending a drug reformulation.  This was subjectively bad faith litigation misconduct that led the court to declare the case exceptional.  Unlike the plaintiff in *Cyclobenzaprine*, Parallel Iron immediately sought to dismiss the case when the standing issue was raised by one defendant and then affirmatively notified all defendants of its willingness to voluntarily dismiss the case.  Moreover, unlike the plaintiff in *Cyclobenzaprine*, Parallel Iron had standing to maintain this suit from its

filing until the transfer of the '526 Patent to RPX.  Parallel Iron did not continue to press this suit

after it became untenable to do so.

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, C-04-4265 MMC, 2005

WL 3634617 (N.D. Cal. Nov. 21, 2005) involved an exceptional case finding based on litigation

misconduct: (i) the plaintiff refused to respond to an interrogatory about its knowledge of non-

US inventive activity; (ii) the plaintiff responded only on a court order to do so, stipulating that

all inventive activity concerning the patent-in-suit occurred in Taiwan—which was not a member

of the WTO or a NAFTA signatory—which made the earliest possible invention date the date of

filing; (iii) the plaintiff did not immediately respond to Marvell's indication to file a Rule 11

motion based on the stipulation that proved the patent-in-suit invalid; (iv) in response to

Marvell's filing a summary judgment motion on invalidity, on those same grounds, the plaintiff

"requested that Marvell 'immediately provide all relevant documents and promptly schedule the

necessary depositions.'"  Nor explain to the court why, along many points in discovery when

Marvell's responses and documents showed the patent invalid, it did not recognize that it was

proceeding with unjustified litigation.  *Id*.  The court held that such conduct was reckless and,

therefore, on the record as a whole the case was exceptional.  *Id*. at *5-*6.  Parallel Iron did not

exhibit the same egregious behavior.  There is no evidence that Parallel Iron abused the

discovery process and when Parallel Iron realized it lacked standing, it voluntarily and

affirmatively sought to dismiss its cases.

EMC also tries to meet the bad faith element by citing *ISCO International Inc. v.

Conducus, Inc*., 279 F. Supp. 2d 489 (D. Del. 2003) (Motion at 7), arguing that "a clear case of

bad faith exists" when the patentee knows the patent is invalid, unenforceable, or not infringed,

"yet represents to the marketplace that a competitor is infringing the patent."  *ISCO* does not help

EMC.  The case in fact undermines EMC's position.  First, the statement on which EMC relies appears in the unfair competition/Lanham Act legal analysis—not a Section 285 analysis.  And the very next sentence confirms that  such representations is not per se "bad faith," even if they may "ultimately prove to be inaccurate, provided they make them in good faith."  279 F. Supp. 2d at 504.  Second, there is no evidence that Parallel Iron continued in bad faith to pursue this case after the '565 Patent became unenforceable.  Here, Parallel Iron did not recognize that as part of the reorganization of its patent portfolio that two patents in the larger portfolio that had to remain together because of the terminal disclaimer had become separated.  Parallel Iron always intended to have all the patent rights necessary to enforce the statutory right to exclude regarding the data storage patents.  Indeed, with Parallel Iron as with *ISCO* there is "***no affirmative evidence*** that…ISCO sought, in bad faith, to enforce an unenforceable patent."  *Id*. at 505 (emphasis added).  That the plaintiff in *ISCO* had documentation in its possession to put it on notice of the unenforceability of its patent was "not sufficient to establish bad faith on ISCO's part in making its marketplace representations."  *Id*. at 505 ("The mere receipt of the ARPA report and the defendants' counterclaims in which they accused Dr. Yandrofski of inequitable conduct are not sufficient to establish bad faith on ISCO's part in making its marketplace representations.").  If simply possessing documents were enough to demonstrate bad faith, "nearly every patent infringement plaintiff would summarily be found liable for unfair competition, as the affirmative defense of inequitable conduct is routinely asserted. *Id*. at 505-06.  Parallel Iron did not knowingly assert an unenforceable patent: instead, it promptly dismissed this case once it learned that it did not have standing to assert the '565 Patent.  Under these circumstances, EMC cannot prove subjective bad faith.

16

### C.     EMC's Reliance on *Eon-Net* Cannot Create A Record Of Bad Faith That Does Not Otherwise Exist Here.

EMC attempts to deflect attention from its lack of clear and convincing evidence of Parallel Iron's subjective bad faith by referring to previous litigation and settlement and license agreements in that previous litigation.   *See, e.g.*, EMC Motion, Ex. L (filed under seal) (settlement and license agreement in litigation docketed as No. 6:11-cv-00036 in the Eastern District of Texas, Tyler Division).   EMC's attempt to paint this case as anything like *Eon-Net* when Eon-Net had an extensive record of litigation misconduct, is misplaced.   *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1327 (Fed. Cir. 2011).   The misconduct included document destruction, no document retention policy and disrespect for discovery and the judicial system in general, shown by the plaintiff's "snide[]" discovery responses—none of which are present here *Id*.   On improper purpose, the district court recognized that all parties had to expend tremendous resources to get to claim construction, the first point at which the baselessness of the plaintiff's position could be exposed.   Thus, quick settlement offers post filing, which the record showed to be in the $25,000 to $75,000 settlement offer range, explained why many defendants offered to settle early, rather than expend the time and resources require to get to claim construction, and only then illustrate for the court just how unfounded the plaintiff's claim construction and infringement theory were.   *Id*.

Aside from an extensive factual record in *Eon-Net* of disrespectful and unprofessional conduct, which nowhere exists here, there is no evidence that Parallel Iron files baseless lawsuits and then offers quick settlements to extort money from Defendants.   In fact, the *Eon-Net* argument does not work here based on the very agreements on which EMC attempts to rely.

17

Motion at 14

n.12.[7]  An inapt *Eon-Net* argument does not cure EMC's lack of controlling authority or clear

and convincing evidence to find this case exceptional or justify attorney fees.

### D. EMC Misstates The Standard It Must Meet And Makes No Argument To Justify Fees, Even If The Case Were "Exceptional."

EMC is required to meet its burden of proof of clear and convincing evidence on two

fronts: first, that the case should be declared exceptional; second, it must be shown that the

exceptional case is one that justifies fees.  *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324,

1327 (Fed. Cir. 2003).  "[T]he award of attorney fees is not automatic, even for the extraordinary

case." *Nat'l Presto Indus., Inc. v. W. Bend Co*., 76 F.3d 1185, 1197 (Fed. Cir. 1996); *Matsushita*

*Battery Indus. Co. v. Energy Conversion Devices, Inc.,* No. 96-101-SLR, 1997 WL 811563, at

*7-*8 (D. Del. Dec. 23, 1997) (stating that even if court found bad faith, "in balancing the

equities an award of attorneys' fees would not serve the interest of justice"; noting coiurt's

discretion to not award fees).  Nothing in EMC's briefing shows that the equities justify a

departure from the American rule where parties assume their own fees and expenses.  Indeed, if

any equitable considerations are considered it should be those that are on Parallel Iron's side—

including its having to respond to EMC's retaliatory, entirely duplicative litigation in the District

of Massachusetts

If the Court does find the case exceptional, however, and determines that EMC has

sufficiently argued for a fee award and other expenses, Parallel Iron reserves the right to object

to whatever costs and expenses and fees that EMC intends to seek as a penalty.  Parallel Iron's

inquiries on this subject before EMC filed its motion on this point were rebuffed.  At a minimum, EMC should not receive compensation for fees, costs, or expenses after Parallel Iron indicated on May 29, 2012, that it would dismiss its case against all defendants and postponed pending deadlines with the Court, or for work that it will not have to repeat in the pending litigation concerning this technology.

## IV.    CONCLUSION

EMC's motion falls short, on the law and the record, to meet the heavy burden of clear and convincing evidence of bad faith conduct to either declare this case exceptional or justify a fee/cost award.  The Court should deny the motion.

Original Filed: August 31, 2012                      BAYARD, P.A.
Redacted Version: September 14, 2012

                                                      */s/ Richard D. Kirk*
                                                      Richard D. Kirk (rk0922)
                                                      Stephen B. Brauerman (sb4952)
                                                      Vanessa R. Tiradentes (vt5398)
                                                      222 Delaware Avenue, Suite 900
                                                      P.O. Box 25130
                                                      Wilmington, DE  19899
                                                      (302) 655-5000
                                                      rkirk@bayardlaw.com
                                                      sbrauerman@bayardlaw.com
                                                      vtiradentes@bayardlaw.com

                                                      *Attorneys for Plaintiff Parallel Iron, LLC*