IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARALLEL IRON LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-799-RGA |
| | : | |
| ADKNOWLEDGE INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Richard D. Kirk, Esq., Bayard, P.A., Wilmington, Delaware; Attorney for Plaintiff.

Jack B. Blumenfeld, Esq., Morris, Nichols, Arsht & Tunnell LLP.; Attorney for Defendant.

November 2, 2012
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant EMC Corporation's Motion for Attorneys' Fees. (D.I. 112). The motion is premised upon the claim that this is an exceptional case. 35 U.S.C. § 285.

The Plaintiff, Parallel Iron, LLC, owns the '565 patent. Plaintiff sued 15 companies in the District of Delaware in the above-captioned suit, alleging infringement of that patent.[1] There was, however, a serious flaw with Parallel Iron's litigation. The '565 patent could not stand on its own two feet. It was subject to a terminal disclaimer requiring that it have common ownership with the '526 patent in order to be enforceable. (D.I. 114, Exh.D). At one time Ring Technology owned both the '565 and '526 patents. In March 2010, about eighteen months before the start of this litigation, Ring Technology assigned the '565 patent to its subsidiary, Parallel Iron, with Ring Technology retaining the '526 patent. This action was filed on September 9, 2011. (D.I. 1). Ring Technology sold the '526 patent to RPX effective December 28, 2011, that is, about three months after this suit was filed. (D.I. 114, Exh.H).

On May 29, 2012, Amazon.com, one of the defendants in this lawsuit, brought to Parallel Iron's attention, in some detail, the terminal disclaimer issue, and advised Parallel Iron that to continue the litigation against Amazon.com would subject Parallel Iron to sanctions. (D.I. 121, Exh.A). Parallel Iron did not take long to digest Amazon.com's message. It advised all remaining defendants the same day that it would be dismissing the case. (D.I. 114, Exh.I). Parallel Iron filed a stipulation of dismissal against EMC on July 16, 2012.[2] (D.I. 109).

---

[1] Parallel Iron filed other cases against additional defendants asserting the same unenforceable patent.

[2] The delay from May 29th to July 16th is not fully explained, but may be because the parties did negotiate the subject of this motion before concluding that it could not be resolved by

EMC, justifiably aggrieved at having spent in excess of $200,000 in attorneys' fees defending against a meritless suit, filed this motion to have the case declared exceptional and to recover its attorneys' fees.

Parallel Iron describes its pre-suit investigation as "costly and extensive." (D.I. 118, p.5). That may be, but it apparently did not include any consideration of the terminal disclaimer. [On the face page of the '565 patent, there is the fairly prominent statement, "This patent is subject to a terminal disclaimer." (D.I. 1-1, at 2).].

Plaintiff submitted two declarations. (D.I. 119 & 120). The principal founder of Parallel Iron states that he believed Parallel Iron possessed all necessary intellectual property rights for its suit until advised otherwise by his attorneys in May 2012. His declaration does not mention "terminal disclaimer" or the '526 patent. The general counsel of Parallel Iron also submitted a declaration. He too does not mention "terminal disclaimer" or the '526 patent, although one might infer from the declaration that patents were being traded a bit carelessly between related corporations.

Thus, the overall picture presented is that the Plaintiff was engaged in extensive litigation unaware that there was a potentially fatal flaw in its strategy.

The parties agree that the relevant standard for this motion is that the Defendant's motion should only be granted if the Defendant shows that "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 543-44 (Fed. Cir. 2011). The showing needs to be by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). While I

---

agreement. (D.I. 119, ¶11; D.I. 122, p.2, n.1).

3

am quite convinced that the litigation was, or became, objectively baseless,[3] the question of subjective bad faith is much less obvious.  Indeed, in my opinion, EMC has not proved that the litigation was brought, or continued, in subjective bad faith.  While I agree with EMC that Parallel Iron should have known that it needed both patents to bring (or to continue to prosecute) the suit, the evidence does not persuade me that Parallel Iron consciously knew that it did not have them both.  First, mistakes, even costly mistakes, happen.  It is the simplest explanation of what happened here, and therefore the most likely.  Second, there was nothing worthwhile to be gained by splitting the ownership of the patents, and a lot to lose by doing so.  Third, the reaction to Amazon.com's e-mail was an extremely prompt "fold."  As Plaintiff points out, one might easily interpret that as a sign of good faith, and I think it undercuts EMC's argument for bad faith.  While there might be circumstances where the prompt "fold" could be interpreted as recognition that the "jig was up," that is not what it looks like to me here.

Thus, I do not find that EMC has shown "subjective bad faith," and I will deny its motion.

---

[3] There is some back-and-forth about whether it was sufficient for related companies to own the two patents, or whether they had to be owned by the same company. *Compare* D.I. 118, pp.9-12, *with* D.I. 122, pp.3-4.  If I were to decide to award attorneys' fees, I would need to resolve this issue to decide the amount of fees.  In view of the decision I actually reach, however, I do not decide the issue, as its decision would have no impact on my conclusion.